[No. 7549-4-III.  Division Three.  August 4, 1987.]

THE STATE OF WASHINGTON, *Respondent,* v. AGUSTIN CASTRO HERNANDEZ, *Appellant.*

*Scot D. Stuart,* for appellant (appointed counsel for appeal).

*Jack Burchard, Prosecuting Attorney,* and *Michael B. Dodds, Deputy,* for respondent.

McINTURFF, C.J.—Agustin Castro Hernandez was convicted of rape in the first degree and robbery in the first degree upon his plea of guilty. He appeals his exceptional sentence of 159 months on the rape conviction, to run concurrently with his 82–month sentence on the robbery conviction. The standard sentence for this offense was 86 to 106 months, based upon an offender score of 2. We affirm.

In the sentencing memorandum, Mr. Hernandez stipulated to the following facts: Mr. Hernandez is a 17–year–old Mexican male illegally in this country. The victim, C.B., is a 26–year–old female. After drinking heavily throughout the afternoon, Mr. Hernandez abducted the victim from the front porch of her home in Brewster, Washington, on September 7, 1985. Mr. Hernandez held a broken glass bottle to her neck and forced the victim to drive him in her vehi-

cle north toward Okanogan, Washington. Mr. Hernandez speaks very little English and used gestures to communicate with the victim. During the course of the trip north Mr. Hernandez continued to threaten the victim with the broken glass while he unhooked her bra and fondled and sucked her breasts. Also during the course of this trip north, Mr. Hernandez requested money from the victim accompanied by a threatening gesture with the broken glass. While they were driving, Mr. Hernandez took the victim's wedding rings from her after she indicated she did not have any money.

After arriving at Okanogan, Mr. Hernandez directed the victim to drive further north to Omak and then to Riverside. After arriving there, he told her to drive off the highway onto a dirt road; they traveled about a quarter of a mile and stopped. Mr. Hernandez forced the victim from the car by holding the broken glass to her neck and holding onto her hair. Mr. Hernandez had the victim remove her pants and then he tripped her to the ground. Mr. Hernandez forced her to have one act of sexual intercourse. During the act, the victim was able to throw the broken glass bottle in the bushes. After the act of intercourse, Mr. Hernandez forced the victim back into her car. He drove at this time, but due to his intoxicated state he was weaving all over the road. At one point, when the car had slowed down to 40 to 45 miles per hour, the victim jumped from the vehicle. Mr. Hernandez traveled about 3 miles further before he crashed the car into a guardrail. He fled on foot for about a mile before he was apprehended by the police. From the time the victim was dragged from her porch until she jumped from the car was 2 to 2½ hours.

At the sentencing hearing, the victim and Sheriff Johnson testified. Sheriff Johnson observed the victim after she was examined at the hospital and said "she was so completely both physically and emotional[ly] devastated" that he almost bawled, he felt so bad for her. Sheriff Johnson had encountered between 75 and 100 rapes in his experience. He said although the weapon was not used on the

victim, he had "never seen anybody involved as a victim of a rape that was so fearful of their life that they would jump from a speeding automobile and as a result suffer the physical trauma and the emotional trauma that this victim did". The victim was not physically injured or scarred by use of the weapon.

The victim testified as to the threats and brutality Mr. Hernandez inflicted upon her; that while on the highway, Mr. Hernandez kept the bottle to her throat and fondled and bit her breast; that he ran the bottle across her stomach, cutting her underwear with it; that he pushed her out of the car, pulling her hair; that Mr. Hernandez hit her in the face and the jaw and then threw her to the ground and raped her; that after the rape he struck her again. Lastly, and critically important, she said he threatened her by saying she would have to die and he was going to kill her.

Because we affirm the exceptional sentence, we do not reach the issue related to computation of the standard range for this offense. *State v. Altum*, 47 Wn. App. 495, 500, 735 P.2d 1356 (1987) (notwithstanding the fact that the trial judge is mistaken as to the applicable presumptive sentence, an exceptional sentence is not automatically voided. The central inquiry is whether the reasons given by the trial judge justify the exceptional sentence). The issue concerned whether the rape and robbery were "[s]eparate crimes encompassing the same criminal conduct . . ."[1]

---

[1]Mr. Hernandez argues it was error for the court to conclude the rape and robbery are not "[s]eparate crimes encompassing the same criminal conduct . . ." pursuant to former RCW 9.94A.400(1)(a).

The result of the court's holding that rape and robbery convictions could be considered separately for sentencing purposes was that the court used the robbery conviction as an "other current offense" in computing Mr. Hernandez's sentencing history on the rape conviction. In so doing, the court increased the offender score from 0 to 2, thereby increasing the standard range.

Interpretation of the phrase "[s]eparate crimes encompassing the same criminal conduct . . ." has occupied much time of the appellate courts; currently the Washington Supreme Court has accepted review on two cases, so guidance seems imminent. *State v. Franklin*, 46 Wn. App. 84, 729 P.2d 70 (1986), *review granted*, 107 Wn.2d 1025 (1987); *State v. Green*, 46 Wn. App. 92, 730 P.2d 1350 (1986), *review granted*, 107 Wn.2d 1025 (1987).

The dispositive issue is whether the court erred in imposing an exceptional sentence.

RCW 9.94A.120(2) and (3) provide:

(2) The court may impose a sentence outside the standard sentence range for that offense if it finds, considering the purpose of this chapter, that there are substantial and compelling reasons justifying an exceptional sentence.

(3) Whenever a sentence outside the standard range is imposed, the court shall set forth the reasons for its decision in written findings of fact and conclusions of law. A sentence outside the standard range shall be a determinate sentence.

RCW 9.94A.390 provides a nonexhaustive list of aggravating factors that the court may consider in the exercise of its discretion to impose an exceptional sentence. One of these factors is that "[t]he defendant's conduct during the commission of the current offense manifested deliberate cruelty to the victim." RCW 9.94A.390(2)(a).

Under RCW 9.94A.210(4), in order for a reviewing court to reverse a sentence outside the standard range, the reviewing court must find:

(a) Either that the reasons supplied by the sentencing judge are not supported by the record which was before the judge or that those reasons do not justify a sentence outside the standard range for that offense; or (b) that the sentence imposed was clearly excessive or clearly too lenient.

■ There is a 2–part analysis under RCW 9.94A.210-(4)(a); first the appellate court must decide if the sentencing judge's reasons for imposing an exceptional sentence are supported by the record. *State v. Nordby,* 106 Wn.2d 514, 517, 723 P.2d 1117 (1986). This is a factual determination which will be upheld unless clearly erroneous. *Nordby,* at 518; *State v. Pascal,* 108 Wn.2d 125, 135, 736 P.2d 1065 (1987).

Here, the reasons given by the trial court for the exceptional sentence were that Mr. Hernandez showed deliberate cruelty to his victim and invaded an area of privacy at the

initial abduction. The trial court's findings of fact were:

2. That this particular crime of Rape was a very brutal crime.

3. The victim was severely brutalized emotionally for 2 to 2½ hours.

4. The injury to the victim could not have been worse, save death or serious injury.

5. The victim suffered continuous and repeated threats to her life.

6. The Defendant abducted the victim from the porch of her home.

7. The Defendant showed contempt for his victim.

8. The victim had to leap from a speeding vehicle to protect her life.

9. The victim both before and after the rape was beaten.

These factual findings are supported by the record. The stipulated facts and testimony at the sentencing hearing support the court's finding that this particular crime was a very brutal crime; it encompassed the abduction of the victim over a 2– to 2½–hour period, physical blows to the victim and rape. Sheriff Johnson's testimony provides evidence of the severe emotional trauma the victim suffered. Threats to the victim's life were implied from the conduct of Mr. Hernandez by the pressing of the broken bottle to her throat and use of the weapon to cut her clothing. Mr. Hernandez also verbalized these threats to the victim by telling her she would have to die and he was going to kill her. Mr. Hernandez showed contempt for the victim as evidenced by his laughing at her distress following his threats. The victim was so emotionally traumatized she felt she had to jump from the car, which was traveling at 40 to 45 miles per hour, to save her life. These findings are not clearly erroneous.

The second part of RCW 9.94A.210(4)(a) requires an independent determination, as a matter of law, whether the sentencing judge's reasons justify imposition of a sentence outside the presumptive range. *State v. Nordby, supra* at 518. The reasons must be substantial and compelling and

must consider factors other than those necessarily considered in computing the presumptive range for the offense. *Nordby,* at 518.

The first justification for imposition of this sentence outside the presumptive range is that Mr. Hernandez invaded an area of privacy in the initial abduction of the victim. The initial abduction was from the victim's front porch, where she was attempting to unlock her door. Under *Nordby,* this is not a substantial and compelling reason to *impose an exceptional sentence.* While we do not hold invasion of privacy can never justify an exceptional sentence, under these circumstances we find it insufficient.

■ Exhibition of deliberate cruelty toward his victim is the second justification given by the trial court and one specifically mentioned by RCW 9.94A.390(2). In D. Boerner, *Sentencing in Washington* § 9.13, at 9–32 through 9–35 (1985), the meaning of "deliberate cruelty" is analyzed as an aggravating factor. Guidelines for Minnesota courts contain a similar factor. D. Boerner, at 9–32. The most frequent category of crimes in which exceptional sentences have been imposed by Minnesota courts have been those involving sexual conduct. D. Boerner, at 9–35. Departures have been justified based on the number and nature of the sexual acts involved, the length of time involved,[2] location of the crime,[3] infliction of physical injury,[4] threats to the

---

[2]*State v. Heinkel,* 322 N.W.2d 322, 324 (Minn. 1982) (2 hours was sufficient for exceptional sentence when there were various types of sexual contact and penetration; victim was abducted from shopping center and forced to drive defendant in her car to rural area; victim believed she was in imminent danger of being murdered).

[3]*State v. Van Gorden,* 326 N.W.2d 633, 635 (Minn. 1982) (dragging victim from home to a wooded area); *State v. Deschampe,* 332 N.W.2d 18, 19 (Minn. 1983) (sexual assault after taking victim to wooded area).

[4]*State v. Morales,* 324 N.W.2d 374 (Minn. 1982) (gratuitous infliction of personal injury; defendant choked victim so she could not breathe and hit the victim on the face, causing her to fall back into some rocks).

victim during the crime[5] and threats of injury to other persons. D. Boerner, at 9–35. While a defendant's conduct may not have been different in kind from that of many rapists, a departure is justified if the conduct is sufficiently different in degree. D. Boerner, at 9–36.

Here, Mr. Hernandez was convicted of first degree rape, an inherently brutal crime, defined as sexual intercourse by forcible compulsion with a deadly weapon, or kidnap, or serious physical injury or unlawful entry into a vehicle or building. RCW 9A.44.040.

Subjecting the victim to abduction, physical blows, and verbal threats to her life, physically threatening her with a deadly weapon, compelling her to jump from a moving vehicle, and forcing her to endure the ordeal for a period of 2 to 2½ hours are not circumstances contemplated within the definition of first degree rape. Therefore, a departure from the standard sentence was justified.

■ Mr. Hernandez' last contention is that the court's sentence was clearly excessive. Under *State v. Oxborrow,* 106 Wn.2d 525, 535, 723 P.2d 1123 (1986), an exceptional sentence is reviewed under the abuse of discretion test. Abuse of discretion occurs when a court takes an action that no reasonable person would have taken. *Oxborrow,* at 531. Mr. Hernandez argues the court abused its discretion when it failed to consider his age (17 at the time of the offense) and lack of prior criminal involvement. However, the trial court considered Mr. Hernandez' age and reduced the sentence accordingly. Nor was it an abuse of discretion to disregard the defendant's lack of a prior criminal record. The court did not err in imposing an exceptional sentence.

---

[5]*State v. Johnson,* 327 N.W.2d 580, 581 (Minn. 1982) (wielded knife and threatened to kill the victim); *Davis v. State,* 324 N.W.2d 802 (Minn. 1982) (threats of death); *State v. Gissendanner,* 343 N.W.2d 668, 669 (Minn. 1984) (threats of imminent death).

The judgment of the Superior Court is affirmed.

GREEN and GROSSE, JJ., concur.

Review denied by Supreme Court December 2, 1987.