[Nos. 8931–2–III; 8878–2–III.   Division Three.   December 13, 1988.]

THE STATE OF WASHINGTON, *Respondent,* v. JAMES HENRY SHEPHARD, *Appellant.*

*In the Matter of the Personal Restraint of*
JAMES HENRY SHEPHARD, *Petitioner.*

*Mary Schultz,* for appellant (appointed counsel for appeal).

*Donald C. Brockett, Prosecuting Attorney,* and *Patricia Thompson, Deputy,* for respondent.

THOMPSON, C.J.—James Henry Shephard challenges a 63–month sentence for indecent liberties involving his 10–year–old niece.

Mr. Shephard had pleaded guilty to indecent liberties in 1982, prior to the effective date of the Sentencing Reform Act of 1981 (SRA).[1] At that time, the court imposed a 10–year deferred sentence and placed him on probation. When Mr. Shephard violated the terms of his probation in 1987, the court sentenced him to 63 months with credit for the

---

[1]Mr. Shephard has filed both an appeal and a personal restraint petition, raising the same issues. We have consolidated the two matters. However, we note that the proper procedure to obtain review of a trial court decision fixing a minimum term of incarceration for a pre–SRA conviction is to file a personal restraint petition. *In re Rolston,* 46 Wn. App. 622, 623, 732 P.2d 166 (1987). We therefore treat the appeal as a personal restraint petition.

1,484 days he spent in an inpatient treatment program at Eastern State Hospital and in jail pending his probation revocation hearing.[2] The standard range under the SRA is 12 to 14 months.

Mr. Shephard was found to have violated the terms of his probation by going to Splash Down, a water slide recreation area frequented by young people. He does not contest this. Rather, he objects[3] to the court finding that:

XI.

The following circumstances exist in this case (some being aggravating per the SRA and some being based on pre–SRA reasoning):

1. *Vulnerable Victim.* The original victim was the niece of the defendant, this being a position of trust and confidence used by the defendant which made the victim particularly vulnerable and less likely to report because of this. The contact took place over a long period of time.

2. *Rehabilitation.* The defendant was placed in a treatment program to deal with his sexual problems. The defendant has had and continues to have a serious problem with regard to his sexual deviancy that has not been cured by treatment &/or controlled.

3. *Future Dangerousness.* Based on the length of the defendant's history of sexual deviancy, failure of treatment and violation by going to Splash Down, an area that placed the defendant in an outlet situation, a showing of dangerousness to the community is made.

At the probation revocation hearing, the court relied on the presentence investigation report (PSI) prepared on Mr. Shephard in 1982; a psychological evaluation of Mr. Shephard also drafted in 1982 by John Colson, a therapist; and a 1987 letter from staff members of the sexual offender program at Eastern State Hospital.[4]

---

[2]Credit for this time is required by the holdings in *In re Knapp,* 102 Wn.2d 466, 687 P.2d 1145 (1984); *In re Phelan,* 97 Wn.2d 590, 647 P.2d 1026 (1982).

[3]Mr. Shephard makes no formal assignments of error in his briefs, but his objections are clear from his argument.

[4]Copies of these documents are attached to the State's brief on appeal; the originals are not part of our record.

The PSI states Mr. Shephard's niece told investigators her uncle had numerous sexual contacts with her over a year and a half and perhaps longer. This report also notes Mr. Shephard had been in counseling two times before the incident with his niece—once in 1970 following a situation in which he exposed himself through a window to four young girls, and a second time in 1979 when he had sexual contact with a neighbor girl. According to Mr. Colson, Mr. Shephard admitted having had a "desire for little girls" for at least 12 years. In the letter from the staff at Eastern State Hospital, the authors state that in the course of treatment Mr. Shephard admitted to a history of sexual contacts with young girls, at least one of which occurred at a swimming pool. The letter concluded the Mr. Shephard was no longer amenable to treatment in the sexual offender program and the staff believed he presented a risk to the community.

The first question is whether the court's reasons justify the sentence. This question requires us to consider the law applicable to post–SRA sentencings on pre–SRA convictions.

The sentencing reform act went into effect on July 1, 1984. While its effect is prospective only, RCW 9.95.011 provides that in sentencing pre–SRA cases the court "shall attempt to set the minimum term reasonably consistent with the purposes, standards, and sentencing ranges adopted [in the SRA] . . ." On the other hand, RCW 9.95-.009(2) states that the sentencing authority, when imposing an exceptional sentence in a pre–SRA case, should "consider the different charging and disposition practices under the indeterminate sentencing system."

*In re George*, 52 Wn. App. 135, 143, 758 P.2d 13 (1988) considered the effect of RCW 9.95.009(2):

The amendment is a clear attempt by the Legislature to harmonize pre– and post–SRA sentencing practices and to avoid the inevitable inequities and discrepancies that would otherwise occur were SRA sentencing practices merely to be superimposed on cases initially

charged under pre–SRA practices. *See Addleman [v. Board of Prison Terms & Paroles,* 107 Wn.2d 503, 511, 730 P.2d 1327 (1986)]. The pre– and post–SRA sentencing systems are fundamentally different. Under the SRA, only offenses charged and proven can be used to determine the term of incarceration. RCW 9.94A.370; *State v. McAlpin,* 108 Wn.2d 458, 466, 740 P.2d 824 (1987). *Under pre–SRA practices,* however, defendants often entered into plea agreements in which it was understood *the sentencing authority would consider surrounding circumstances and uncharged acts* in setting a term of incarceration. *See* D. Boerner, *Sentencing in Washington* § 2.4, at 2–27, § 5.2, at 5–2 (1985).

(Footnotes and citations omitted. Italics ours.)

The court held RCW 9.95.009(2) allows the sentencing court to consider uncharged crimes when sentencing for pre–SRA convictions. *George,* at 146. Otherwise, the pre–SRA defendant would receive an unfairly lenient sentence. *George,* at 145. The State has an incentive under the SRA to charge multiple counts where the facts for such additional counts are present. There was no such incentive pre–SRA, because the State knew the court properly could base its sentencing decision on uncharged acts. If the pre–SRA defendant is sentenced solely under SRA standards, his sentence would be significantly less severe than that of a post–SRA defendant who committed identical acts but was charged with multiple counts. *George,* at 145.

In addition, an unsuccessful attempt at rehabilitation, while not a reason to impose an exceptional sentence under the SRA, is an appropriate consideration under the pre–SRA indeterminate sentencing scheme. *Addleman v. Board of Prison Terms & Paroles,* 107 Wn.2d 503, 511, 730 P.2d 1327 (1986); *In re Storseth,* 51 Wn. App. 26, 751 P.2d 1217 (1988); *In re Rolston,* 46 Wn. App. 622, 626, 732 P.2d 166 (1987).

Accordingly, our review of the findings of the sentencing court takes into account the purposes, standards and sentencing ranges of the SRA and the charging and disposition practices of the prior system.

# I
## Vulnerability

One of the aggravating circumstances listed under RCW 9.94A.390(2) is:

(b) The defendant knew or should have known that the victim of the current offense was particularly vulnerable or incapable of resistance due to extreme youth, advanced age, disability, or ill health.

"Vulnerability not due to one of the enumerated causes [can] also form the basis for an exceptional sentence, since the guidelines are illustrative, not exclusive . . ." D. Boerner, *Sentencing in Washington* § 9.13(b), at 9–38 (1985). *See also State v. Fisher*, 108 Wn.2d 419, 427, 739 P.2d 683 (1987). In *State v. Harp*, 43 Wn. App. 340, 343, 717 P.2d 282 (1986), the court held that two sex abuse victims were particularly vulnerable because they had a familial relationship with the defendant and he was responsible for their care. *See also State v. Cermak*, 344 N.W.2d 833, 839 (Minn. 1984) (unspecified trust relationship in sexual abuse case justified departure from sentencing range).

■ Mr. Shephard argues the mere existence of the niece/uncle relationship without proof he was a care giver is not sufficient to establish "particular vulnerability" of the victim. We disagree. A child places trust in family members that he or she would not place in an unrelated adult. As a consequence, a child is less likely to question the actions of family members. Moreover, the PSI reports that at least one of the incidents of sexual contact occurred while the niece was spending the night in Mr. Shephard's home. Mr. Shephard had a care giver role in this situation. We hold the court did not err in finding the niece was particularly vulnerable.

Based on the PSI, the court also found the contact with the niece took place over a long period of time. Mr. Shephard argues that the court should not have considered this information. He cites RCW 9.94A.370(2), which states: "Facts that establish the elements of . . . additional crimes may not be used to go outside the presumptive sentence

range . . ." Mr. Shephard was charged only with indecent liberties occurring during a specific 2–week time frame. We reject Mr. Shephard's argument for two reasons: One, the court in *George* held that post–SRA sentences for pre–SRA offenses could be based, in part, on uncharged crimes. Since sentencing judges under the prior system were allowed to take into account any evidence of a defendant's criminality, whether or not it had resulted in a conviction, the court here properly considered the uncontested information in the PSI as to the length of time Mr. Shephard had sexually abused his niece. Two, the Legislature amended RCW 9.94A.370(2) in April 1987 to add an exception that "[t]he offense was part of an ongoing pattern of sexual abuse of the same victim under the age of eighteen years manifested by multiple incidents over a prolonged period of time; . . ." RCW 9.94A.390(2)(e). This exception applies in Mr. Shephard's case.

## II
### LACK OF REHABILITATION

Mr. Shephard recognizes that insufficient rehabilitation is an appropriate consideration for the sentencing judge in cases which involve pre–SRA convictions. *See Addleman; Rolston.* However, he argues the court's finding that he "continues to have a serious problem with regard to his sexual deviancy . . ." is not supported by the record. He points out that he completed 3 years of inpatient and 1½ years of outpatient treatment for his sexual deviancy.

■ Mr. Shephard's involvement in treatment does not prove he is rehabilitated. Two members of the sexual offenders' program staff at Eastern State Hospital testified at the probation revocation hearing. Both stated the fact Mr. Shephard went to Splash Down without an approved adult "check and balance" constituted strong evidence that he had not benefited from the program.[5] According to one of the witnesses, the Splash Down incident "so significantly

---

[5]The sexual offender program staff can allow an offender to go places not ordinarily allowed in the company of an approved adult.

tied in with his previous behavior [*i.e.,* his admitted prior sexual contact at a swimming pool] that there was an opinion that he, basically, was back in his pattern, or very close to his pattern of reoffending". The staff members indicated the violation was the last in a long series of problems Mr. Shephard had experienced in the program.

The court relied on the staff members' testimony, reasoning:

Mr. Shephard's history and background is well documented. . . . And it relates to young girls, and has a subfactor, in some instances, of swimming pools, or area near swimming pools where one might expect briefer clothing to be worn. That difficulty was certainly well known to Mr. Shephard.

. . . [C]ertainly the longer he was in the program one would expect him to become more aware of the requirements. If nothing else, when he went to the Splash Down facility, considering all of the past history and everything that happened to him in the program at Eastern, it certainly indicates to the Court that the treatment was not successful. If he had been successful, he would have known that quick he should never have gone.

We conclude the record supports the court's finding that Mr. Shephard was not rehabilitated.

## III
### FUTURE DANGEROUSNESS/PRIOR OFFENSES

The bases for the court's finding of future dangerousness were: (a) Mr. Shephard's long history of sexual deviancy; and (b) the Splash Down incident, which the court viewed as evidence of his inability to stay out of situations in which he had abused children in the past.

A court's subjective determination that the standard range does not adequately advance the purpose of the SRA to protect the public is not a substantial and compelling reason justifying a departure. *State v. Pascal,* 108 Wn.2d 125, 137–38, 736 P.2d 1065 (1987). However, "'[g]iven a history of similar acts or other corroborating evidence, the court may enhance the sentence on the basis of a considered assessment of future dangerousness.'" *State v. Woody,*

48 Wn. App. 772, 779, 742 P.2d 133 (1987) (quoting *State v. Olive,* 47 Wn. App. 147, 150, 734 P.2d 36, *review denied,* 109 Wn.2d 1017 (1987)), *review denied,* 110 Wn.2d 1006 (1988). *See also State v. Wood,* 42 Wn. App. 78, 82, 709 P.2d 1209 (1985), *review denied,* 105 Wn.2d 1010 (1986).

■ Mr. Shephard distinguishes these latter three cases on the ground they involved evidence of prior *convictions* for sexual offenses, as well as evidence the defendants were not amenable to treatment. Here, Mr. Shephard has no prior convictions. However, the 1982 report from therapist Colson states Mr. Shephard admitted he had had a desire for little girls for at least 12 years. This report provides "corroborating evidence" in the record for the court's finding that Mr. Shephard had a long history of sexual deviancy. *See Woody; State v. Payne,* 45 Wn. App. 528, 533, 726 P.2d 997 (1986). This information, coupled with the evidence that Mr. Shephard was not amenable to treatment, was sufficient to justify the court's finding that he posed a future danger to society. It had no need to rely on evidence of the prior uncharged acts in 1970 and 1979, as detailed in the PSI.

The second issue raised by Mr. Shephard is whether the 63–month sentence is clearly excessive. We hold it is not.

■ If the sentencing court finds substantial and compelling reasons to go outside the standard range, it may use its discretion to determine the precise length of the sentence; its decision should not be reversed as "clearly excessive" absent an abuse of discretion. *State v. Oxborrow,* 106 Wn.2d 525, 530, 723 P.2d 1123 (1986); *Woody,* at 776. In *Woody,* the court held that a sentence which was six times the length of the standard range was not clearly excessive. *Woody,* at 781. In light of the reasons given by the court here, Mr. Shephard's sentence is reasonable.

Mr. Shephard's personal restraint petition is dismissed.

MUNSON, J., and RIPPLE, J. Pro Tem., concur.