[No. 9433-2-III.   Division Three.   November 30, 1989.]

THE STATE OF WASHINGTON, *Respondent,* v. DENNIS
DOW PRYOR, *Appellant.*

GREEN, J., dissents by separate opinion.

*Paul Wasson,* for appellant (appointed counsel for appeal).

*Paul Klasen, Prosecuting Attorney,* and *Mary Ann Brady, Deputy,* for respondent.

SHIELDS, J.—Dennis Dow Pryor pleaded guilty to two counts of indecent liberties with an 8–year–old female. RCW 9A.44.100(1)(b). He received an exceptional sentence for the maximum term of 10 years and appeals. We remand for resentencing.

The underlying facts are related in the presentence report:

> According to the Moses Lake Police reports . . ., officers contacted Child Protective Services . . . on 10–09–87, regarding a possible child sex abuse case, involving two victims, [AV], age four years and [LL], age eight years.
>
> Officers learned that the suspect, Dennis Pryor, was living at the [V] residence in August–September, 1987, when the incidents occurred.
>
> Officers interviewed [AV] and she indicated her friend, [LL], was staying with her and they were in the living room. She related the Pryor had tickled her on the "privates", side and on her butt. She pointed to the vagina and butt of an anatomical doll, when asked to show where she was touched. She state[d] he had touched her on the outside of her clothing.
>
> This incident appears to have occurred in about August to mid–September, 1987, while Pryor was on the living room floor wrestling with [AV].
>
> Officers then interviewed [LL]. She stated that while staying with the [V's], during August–September, 1987, she remembers Pryor coming into the bedroom. She indicated she was standing on the bed and Pryor was wearing a pair of jeans and a shirt. He pulled down his pants to where he was naked and rubbed his penis up against her buttock. She then demonstrated this incident by using two anatomical dolls, a male and female.
>
> When asked if anything else happened, she stated Pryor came into her bedroom on about four (4) other occasions and

put his hand under her nightgown and inside her panties and rubbed her vagina. She again demonstrated this by using the anatomical doll. She related she said "No, don't", when he did it, but he continued anyway.

During [an] interview with Mrs. [KL], [LL's] mother, on 03–24–88, she advised [that] her daughter told her the reason she had not told anyone about the incident, was because Pryor had threatened to kill her if she told anyone about what happened.

Mr. Pryor was charged with five counts of indecent liberties with the 8–year–old. He was also originally charged with one count of indecent liberties with the 4–year–old. Pursuant to a plea bargain agreement, he pleaded guilty to two counts of indecent liberties with the 8–year–old and the remaining counts were dismissed.

The presentence report revealed Mr. Pryor had three previous convictions involving minor females—first degree rape of a 14–year–old of unsound mind in Oklahoma in 1971, sexual assault of a 12–year–old in Montana in 1978, and communication with a 10–year–old minor for immoral purposes[1] in Washington in 1984. Both counsel and the trial court apparently considered Mr. Pryor's 1984 offense a misdemeanor and did not consider it when computing his criminal offender score. The trial court determined he had an offender score of 3, based on two prior felony convictions and the one additional current offense, making the standard range sentence for each present count 26 to 34 months. Correctly calculated, Mr. Pryor has an offender score of 4, making the standard range sentence for each present count 31 to 41 months. The prosecutor, pursuant to the plea bargain, recommended a 34–month concurrent

---

[1]Former RCW 9.68A.090(1) reads:

A person who communicates with a minor for immoral purposes is guilty of a gross misdemeanor, unless that person has previously been convicted under this section or of a felony sexual offense under chapter 9.68A, 9A.44, or 9A.64 RCW or of any other felony sexual offense in this or any other state, in which case the person is guilty of a class C felony punishable under chapter 9A.20 RCW.

Because Mr. Pryor had previously been convicted of a felony sexual offense in another state, his conviction of communication with a 10–year–old minor for immoral purposes should have been considered a felony.

sentence on each count. The court, however, sentenced him to concurrent exceptional sentences of 120 months on each count. Subsequently, the court learned it may have misstated the time sequence and nature of the prior convictions in Mr. Pryor's criminal history and granted a motion by Mr. Pryor for a "real facts" hearing pursuant to RCW 9.94A.370(2).[2] At that hearing, evidence of the convictions was admitted. It was determined that for his 1971 conviction of rape of the 14–year–old, Mr. Pryor was given a 15–year sentence of which he served less than 4 years and was released in 1975. For his 1978 conviction of sexual assault of the 12–year–old, he was given a 5–year sentence of which he served 3½ years and was released in 1982. For his 1984 conviction of communication with a 10–year–old minor for immoral purposes, he was sentenced to 1 year, and served approximately 4 months. The trial court adhered to the original conclusion an exceptional sentence was appropriate on reasons of (1) progressively predatory behavior toward minor females, (2) abuse of a position of trust, (3) particular vulnerability of the victim, and (4) deliberate cruelty. This appeal followed.

Mr. Pryor contends the exceptional sentence was unjustified for the first reason because his prior convictions inhered in his offender score. *State v. Hartley,* 41 Wn. App. 669, 705 P.2d 821, *review denied,* 104 Wn.2d 1028 (1985). He also contends the other three reasons do not support an exceptional sentence; and, in any event, a sentence of 120 months is clearly excessive.

The 3–step inquiry necessary in a review of an exceptional sentence is: (1) are the reasons supplied by the sentencing judge supported by the record—a factual determination which this court must uphold absent a finding the reasons are clearly erroneous, *State v. Nordby,* 106 Wn.2d

---

[2] Mr. Pryor's contention the court erred in holding a "real facts" hearing pursuant to RCW 9.94A.370(2) to determine the particular facts and circumstances of his previous convictions must be rejected as he requested the hearing.

514, 517–18, 723 P.2d 1117 (1986); (2) do these reasons justify a sentence outside the standard range for that offense—a matter of law for this court to determine independently, *Nordby,* at 518; and (3) was the sentence imposed clearly excessive? RCW 9.94A.210(4).

## PREDATORY BEHAVIOR

■ The trial court's first reason for an exceptional sentence is "progressively predatory behavior by the defendant towards minor females." As outlined above, Mr. Pryor was convicted of first degree rape of a 14–year–old in 1971, sexual assault of a 12–year–old in 1978, and communication with a minor for immoral purposes with a 10–year–old in 1984. Mr. Pryor's current offense involves an 8–year–old. The trial court made reference to the fact Mr. Pryor was also originally charged with one count of indecent liberties with a 4–year–old. However, a defendant is not accountable for crimes the prosecutor could not or chose not to prove. *State v. Harp,* 43 Wn. App. 340, 342–43, 717 P.2d 282 (1986). Therefore, the charges for indecent liberties with the 4–year–old, which were dismissed, cannot be used to support the reason "predatory behavior".

The State relies on *State v. Wood,* 42 Wn. App. 78, 709 P.2d 1209 (1985), *review denied,* 105 Wn.2d 1010 (1986), to support the finding of "predatory behavior" as justification for the imposition of an exceptional sentence. The precedential value of *Wood* for that unadorned proposition is at best uncertain when the finding is predicated solely on criminal history already taken into account in the defendant's offender score. In *Wood,* the court remanded the case for an evidentiary hearing as to disputed facts and resentencing. In dictum, *Wood,* at 83, stated, "We would uphold an exceptional sentence for one who demonstrates a pattern of predatory sex offenses upon particularly vulnerable victims, yet who cannot be treated for the deviancy." *Wood* implies that in order for "predatory behavior" to support an exceptional sentence, the defendant must not only have

a history of sex offenses, but also the victims must be particularly vulnerable *and* the defendant must be diagnosed and not be amenable to treatment.

In subsequent cases, *Wood* has been cited to support the proposition that an exceptional sentence can be imposed upon an assessment of "future dangerousness." *See State v. Shephard,* 53 Wn. App. 194, 201–02, 766 P.2d 467 (1988); *State v. Holyoak,* 49 Wn. App. 691, 696, 745 P.2d 515 (1987), *review denied,* 110 Wn.2d 1007 (1988); *State v. Woody,* 48 Wn. App. 772, 779–80, 742 P.2d 133 (1987), *review denied,* 110 Wn.2d 1006 (1988); *State v. Olive,* 47 Wn. App. 147, 150, 734 P.2d 36, *review denied,* 109 Wn.2d 1071 (1987). The record necessary for a finding of "future dangerousness" is "a history of similar acts or other corroborating evidence". *Woody,* at 779 (quoting *Olive,* at 150); *Holyoak,* at 696; *State v. Payne,* 45 Wn. App. 528, 533, 726 P.2d 997 (1986). Although arguably stated in the disjunctive, most courts have nevertheless found "future dangerousness" an aggravating factor only when both a history of similar acts *and* evidence that the defendant is not amenable to treatment exist:

> [C]ourts have clearly recognized that an offender's "future dangerousness" is an acceptable reason for an exceptional sentence. Such sentences have particularly been upheld when the offender has a long history of sex offenses against minors but cannot or will not be treated for deviancy.

*In re George,* 52 Wn. App. 135, 147, 758 P.2d 13 (1988). *See also Woody* and *Olive.* Thus, the cases which have found future dangerousness have not been decided on a history of similar acts alone, but have been based on additional evidence of a diagnosis of sexual deviancy and of a defendant's amenability, or lack of it, to treatment. *See State v. Tunell,* 51 Wn. App. 274, 283, 753 P.2d 543, *review denied,* 110 Wn.2d 1036 (1988); *Harp,* at 343.

■ To clarify this in future sex offense cases, we hold that a finding of "predatory behavior" in sex offenses, as stated in *Wood,* requires an assessment of "future dangerousness" to ensure that more than a defendant's criminal

history, which inheres in the offender score, is taken into account. While the record before us reveals a history of similar sex offense convictions involving increasingly younger victims, it is void of testimony regarding Mr. Pryor's diagnosis of amenability to treatment as a sex offender; thus, the record as it now stands supports only a finding of criminal history; it does not support a finding of future dangerousness. While the first inquiry in the 3–step analysis relating to criminal history as outlined in *Nordby* may be answered affirmatively, without the further factual inquiry by the trial court to determine "future dangerousness" as per *Shephard*, the reason cannot be used to justify an exceptional sentence on the second inquiry of the 3–step analysis as a matter of law.

## POSITION OF TRUST

█ The trial court's second reason for an exceptional sentence is Mr. Pryor's abuse of a position of trust. Although the original legislative intent was to use abuse of trust as an aggravating factor in economic cases, abuse of trust has been extended and recognized by the courts as a legitimate aggravating factor in indecent liberties cases. *See Harp* and *Shephard*. In *Harp*, the defendant's 11–year–old stepdaughter and his wife's 9–year–old niece were left in his care while his wife was at work. During his wife's absence, he forced the girls to participate in sexual acts. The trial court found that Mr. Harp used his position of trust as the caretaker for the children to facilitate the molestations. On appeal, the court held abuse of a position of trust was a valid aggravating factor which justified the imposition of an exceptional sentence. *Harp*, at 343. Likewise, in *Shephard*, at 199, the court held as an aggravating factor the fact Mr. Shephard was in a "care giver role" of his 10–year–old niece at the time of at least one of the incidents of indecent liberties. In the present case, the trial court found Mr. Pryor was baby–sitting the victim at the time these offenses occurred. He was in a position of trust, which he breached when he took indecent liberties with the 8–year–old victim.

The record supports the trial court's finding, and abuse of a position of trust justifies a sentence outside the standard range. Thus, both the first and the second inquiry in the 3-step analysis can be answered affirmatively. This reason can be used to justify an exceptional sentence as a matter of law.

### PARTICULAR VULNERABILITY

The trial court's third reason for an exceptional sentence is the particular vulnerability of the victim "because of her tender years." A sentencing court may use the particular vulnerability of a victim due to extreme youth as grounds for an exceptional sentence for the offense of indecent liberties. *State v. Fisher*, 108 Wn.2d 419, 424, 739 P.2d 683 (1987). The victims of that offense range in age from 0 to 14 years.[3] Cases involving indecent liberties have found victims to be "particularly vulnerable" due to extreme youth at age 3 (*State v. Tunell, supra*), age 4 (*State v. Wood, supra*) and age 5½ (*State v. Fisher, supra*), but not at age 7 (*State v. Woody, supra*). In the present case the victim was 8 years old. The record does not support a finding of particular vulnerability due to extreme youth.

■ However, vulnerability has been found in indecent liberties cases, without regard to the age of the victim, when the offender was in a care giver role. *Shephard*, at 199; *Harp*, at 342–43. Although the care giver role is being used to support the aggravating circumstance of breach of trust, an additional fact is added to the care giver role fact—a threat or threats against the victim. Taken together, these facts were held sufficient to support a finding of particular vulnerability in *Harp*, at 343. While the victim here may not have been necessarily vulnerable due to "her tender years", she was nevertheless vulnerable due to the fact she was threatened by a care giver. The record

---

[3]RCW 9A.44.100(1)(b) was in effect at the time of this offense. The statute has now been amended, and the same offense committed against children under the age of 12 is now characterized as child molestation in the first degree, RCW 9A.44.083.

thus supports the finding of vulnerability, which is an aggravating factor justifying a sentence outside the standard range. Both the first and the second inquiry in the 3–step analysis can again be answered affirmatively, and this reason can be used to justify an exceptional sentence as a matter of law.

## DELIBERATE CRUELTY

The trial court's fourth reason for an exceptional sentence is deliberate cruelty, because Mr. Pryor threatened to kill the victim if she informed anyone about the incidents. "Deliberate cruelty" has been defined as "gratuitous violence, or other conduct which inflicts physical, psychological or emotional pain as an end in itself." *State v. Strauss,* 54 Wn. App. 408, 418, 773 P.2d 898 (1989). Courts have found deliberate cruelty when the victim was repeatedly beaten, struck by chunks of concrete, choked, and had her face slammed into a concrete bridge, (*State v. Holyoak, supra*); when the victim suffered a broken nose, chipped tooth, and threats of imminent death, was gang raped and had half her scalp hair pulled out (*State v. Altum,* 47 Wn. App. 495, 735 P.2d 1356, *review denied,* 108 Wn.2d 1024 (1987)); when the victim suffered multiple penetrations and was gang raped (*State v. Dennis,* 45 Wn. App. 893, 728 P.2d 1075 (1986), *review denied,* 108 Wn.2d 1008. (1987)); when the victim had been abducted and taken to a secluded area, was pushed from a car, threatened with a broken bottle and imminent death, and was repeatedly struck over a 2– to 2½–hour period (*State v. Hernandez,* 48 Wn. App. 751, 740 P.2d 374, *review denied,* 109 Wn.2d 1020 (1987)); and, when the victim was abducted, driven across the state line and subjected to multiple rapes over a period of 3 hours (*Foster v. Indeterminate Sentence Review Bd.,* 54 Wn. App. 100, 771 P.2d 1163 (1989)).[4] This case does not reflect the clearly egregious conduct reflected in the cases reviewed above constituting gratuitous violence.

---

[4]For a good discussion of what constitutes "deliberate cruelty," *see State v. Hernandez, supra* at 757–58.

■ However, deliberate cruelty can also be found in the infliction of physical, psychological or emotional pain. *Strauss.* What constitutes "deliberate cruelty" needs to be evaluated in the context of who the victim is. Conduct which may not inflict serious psychological pain on an adult victim can have a devastating effect on a child. In *Tunell,* at 279, the court noted, "the effects on the victim may be used to justify an exceptional sentence if they are significantly more serious than in the usual case." The court in *Tunell* found that the child victims in that case suffered serious psychological effects as a result of the threats used against them, and determined those effects constituted an aggravating factor which justified an exceptional sentence. In the present case, the threats were not made to the victim during the commission of the offense, nor for the purpose of exacting compliance, as in *Strauss,* but rather were made after the fact to keep the little girl from informing anyone what had happened. The presentence report and the testimony of the victim's mother at the sentencing hearing indicate that the victim was then receiving counseling. It is not unusual that a sexually molested child is referred for counseling and that fact alone does not establish that the psychological or emotional effects on the victim are significantly more serious than in the usual case. However, that fact, combined with the threat of death, made by a care giver to a particularly vulnerable child, to assure her silence, support a finding of deliberate cruelty by inflicting "psychological or emotional pain as an end in itself." *Strauss,* at 418. Thus, both the first and second inquiries in the 3–step analysis can be answered affirmatively. This reason can be used to justify an exceptional sentence as a matter of law.

■ The record indicates the court relied heavily but improperly on the first aggravating factor of "progressively predatory behavior" based on Mr. Pryor's criminal history without inquiry into his "future dangerousness". *Fisher,* at 430 n.7. In light of the great disparity between the standard range and the sentence imposed, we cannot assume the

court would impose the same sentence in considering only the valid aggravating factors. *State v. Dunaway,* 109 Wn.2d 207, 219–20, 743 P.2d 1237, 749 P.2d 160 (1987). As with the court in *Harp,* 43 Wn. App. at 342, "inasmuch as we are unable to determine what the sentence would have been had the improper finding not been considered, we must remand to permit the sentencing judge to exercise his discretion upon only proper findings."

### EXCEPTIONAL SENTENCE

At an evidentiary hearing before resentencing in this case, the record may well supply additional facts to support the now improper finding.[5] On resentencing, the now proper findings will, of course, justify an exceptional sentence. However, an exceptional sentence for the maximum term which may be imposed for this offense, based only on the present proper findings, may still be excessive. In *State v. Oxborrow,* 106 Wn.2d 525, 530, 723 P.2d 1123 (1986) the court stated the standard on review for claimed excessive exceptional sentences is abuse of discretion and found the imposition of the maximum sentence on the facts presented in that case were not excessive. This is not to say a maximum sentence is automatically not excessive in every exceptional sentence case on review. The record must reflect the reasons for the particular way the discretion is exercised.

It is increasingly apparent the trial courts, and indeed, the public, are dissatisfied in more and more instances with the sentencing ranges approved by the Legislature under the Sentencing Reform Act of 1981 (SRA) for sex offenders. There has been some response by the Legislature to this

---

[5]Additional fact finding on remand presents difficulties from the prosecutor's standpoint, since an effort to support the maximum sentence could be a violation of the plea agreement. However, both defense counsel and the court can call for additional testimony regarding an appropriate sentence, including amenability to treatment.

dissatisfaction.[6] Consequently, judges in disagreement with the range are finding on inadequate records "aggravating circumstances" to justify the imposition of, in their view, a more reasonable, exceptional sentence. This in turn causes appellate courts to remind trial courts that their dissatisfaction with the standard sentencing ranges imposed under the SRA cannot, by itself, be a reason justifying a departure. *See State v. Pascal,* 108 Wn.2d 125, 137–38, 736 P.2d 1065 (1987); *State v. Crutchfield,* 53 Wn. App. 916, 930–31, 771 P.2d 746 (1989); *State v. Shephard,* 53 Wn. App. at 201; *State v. Young,* 51 Wn. App. 517, 523, 754 P.2d 147 (1988).

The sentence imposed here suggests a possible new trend developing in the trial courts to impose the maximum sentence for an offense once an aggravating circumstance is supported by the record, and the standard range can be set aside. The maximum sentence is to be imposed for only the "worst case" scenario when the "circumstances of the crime distinguish it from other crimes of the same statutory category." *Woody,* 48 Wn. App. at 778; *State v. Armstrong,* 106 Wn.2d 547, 555, 723 P.2d 1111 (1986). It is difficult to view the case before us as a "worst case" of indecent liberties, taking into account the fact patterns and the exceptional sentences imposed in the cases previously reviewed in this opinion.

Unbridled judicial discretion in sentencing is exactly what the SRA was designed to prevent, given the elimination of the administrative authority of the Board of Prison Terms and Paroles to set minimum terms under the former

---

[6]RCW 9A.44.083, child molestation in the first degree, became effective after the occurrence here and deals with the same conduct. It has now been classified as a seriousness level 8 offense by the Sentencing Guidelines Commission. As such, for a level 4 offender, the sentencing range would not be 41 to 54 months, with an average sentence of 4 years. The maximum sentence for a level 8 offense is 12 years, but sentencing courts are precluded from fully utilizing the sentencing grid in child molestation cases, because courts currently cannot impose a sentence greater than the maximum of 10 years. The Sentencing Guidelines Commission may want to request the Legislature to reconsider the maximum sentence of 10 years for these offenses.

indeterminate sentencing statute. The "abuse of discretion" standard set out in *Oxborrow,* at 529–30, and *State v. Nelson,* 108 Wn.2d 491, 740 P.2d 835 (1987), requires a determination on appeal that "no reasonable person would take the position adopted by the trial court." *Nelson,* at 504–05. The practical effect of the standard as stated may result in rubber–stamp approval of any sentence up to the maximum term.

The *Oxborrow* abuse of discretion standard produced a split court upon its inception. Justice Utter stated in his dissenting opinion:

> The abuse of discretion standard advocated by the majority for review of exceptional sentences is inadequate for the purposes of sentencing reform. The abuse of discretion standard is extremely deferential. Under this standard an appellate court will overturn a trial court's decision only if the court's action was "manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." . . . Under this standard appellate courts cannot conduct the review necessary to achieve the uniformity and proportionality envisioned by the drafters of the sentencing reform act.

*Oxborrow,* at 542. The next reported case after *Oxborrow, State v. Armstrong, supra,* made evident the continued conflict within the Supreme Court over the *Oxborrow* standard of review. In his dissenting opinion, Justice Goodloe criticized the abuse of discretion standard, saying:

> [A] very broad discretionary standard for review of exceptional sentences would defeat the purpose of the act once departure was justified. The sentencing of criminals outside the presumptive range would have no structure except that the sentence could not exceed the statutory maximums in RCW 9A.20.020.
>
> Moreover, the majority's decision would defeat the first listed purpose of the sentencing reform act: "[T]hat the punishment for a criminal offense is proportionate to the seriousness of the offense and the offender's criminal history". RCW 9.94A.010(1). . . . What is a proper "proportional" sentence is difficult, if not impossible, to decide in the abstract. Guidance and structure must be given if the trial court can exercise whatever discretion it has in a meaningful way. An "abuse of discretion" standard would simply not provide such a structure, and sentences for similar crimes could vary widely owing

to different trial courts' perceptions of what punishment is ".proper" for a given offense.

*Armstrong,* at 553–54. In addition to the legislative policy of proportionate punishment, another legislative policy is identified in RCW 9.94A.210 to prevent sentencing which is either "clearly excessive or clearly too lenient", RCW 9.94A.210(4)(b), by "developing a common law of sentencing within the state", RCW 9.94A.210(6). One legal scholar has written in this regard:

> A major hope of those who have advocated sentencing reform of this type has been that it would produce a "common law" of sentencing, in which the time–honored methods of the common law—reasons for decisions, appellate review of those reasons and the further articulation and rearticulation of reasons in the light of new circumstances—would be applied to sentencing. . . . If this expectation is met, sentencing decisions in Washington will, to a significantly greater extent than ever before, be based on principle and guided by reason, and much of the promise of the reform will be realized.

D. Boerner, *Sentencing in Washington* § 9.3, at 9–9 through 9–10 (1985); *see also* D. Boerner § 9.22(b), at 9–61. Guidance has been provided Minnesota courts by the adoption there of a "doubling rule": cases in which aggravating factors exist, but which are not "unusually compelling" may receive a sentence not more than double the standard range; cases which are "unusually compelling" because of "severe" aggravating circumstances may receive a sentence beyond double when the conclusion is compelling. *See* D. Boerner § 9.22(b), at 9–63. Both *Oxborrow* and *Armstrong* rejected the Minnesota approach.[7] Were we to have the guidance of the doubling rule here, Mr. Pryor's standard range would be increased to 62 to 82 months. A sentence to 71 months within this range would allow sexual offender treatment within a correctional facility, should it

---

[7]The majority in *Oxborrow,* at 531–32, criticizes the "doubling rule" and cites a case by our court, *State v. Stalker,* 42 Wn. App. 1, 4–5, 707 P.2d 1371 (1985), *review denied,* 107 Wn.2d 1018 (1986), as also being critical of the rule; however, any apprehensions we may have had in *Stalker* could be alleviated by the articulation of principles based on reasons which could develop in a common law approach.

be determined Mr. Pryor would benefit from such a program.[8] In the alternative, the Sentencing Guidelines Commission could recommend, and the Legislature approve, double counting of prior convictions for sexual offenses, as presently done with burglary offenses. In this case, that would have resulted in an offender score of 8 with a standard range of 67 to 89 months within which sexual offender treatment could again be considered.

The problems involved in determining aggravating circumstances and imposing appropriate exceptional sentences must be addressed squarely by all parties involved in the criminal justice system. Prosecutors need to be aware that to a certain extent "the Legislature has vested the broadest of discretion in the prosecuting attorney and tied the hands of the sentencing judge." *State v. Payne*, 45 Wn. App. 528, 532 n.1, 726 P.2d 997 (1986). Prosecutors cannot choose to drop multiple counts[9] or prosecute a lesser offense and then hope the trial court will pull "aggravating factors" out of the hat and impose a lengthier sentence outside the standard range. *See* D. Boerner, *Sentencing in Washington* § 9.16, at 9–49 (1985): "If the state desires to have additional crimes considered in sentencing, it can insure their consideration by refusing to dismiss them and proving their existence. This requirement will significantly increase the accountability of prosecutors for their actions." Likewise, trial courts need to exercise principled and reasoned discretion when sentencing, fully stating their reasons not only for imposing an exceptional sentence, but also for the

---

[8]If, on remand, the court were to have Mr. Pryor diagnosed and assessed for "future dangerousness" and find him amenable to treatment, a lesser sentence than the maximum would permit him to be further evaluated by the Department of Corrections for potential placement in its sexual offender treatment program under RCW 9.94A.120(7)(c), if the sentence imposed is more than 1 and less than 6 years.

[9]In this case, four of the six original counts of indecent liberties were dismissed on a plea bargain. Had they been pursued, then Mr. Pryor's offender score would have been 8, with a standard range of 67 to 89 months, a comparable result to double counting prior convictions for sexual offenses.

length of the exceptional sentence imposed. The reasons in the record can then be reviewed in a meaningful way. At the appellate level, precise articulation and identification of those reasons is necessary for review. Finally, the Legislature should continually review the sentencing ranges for appropriate expression of public policy and concern.

■ Because of Mr. Pryor's previous felony convictions, he had an offender score of 4, making the sentencing range at the time 31 to 41 months with an average sentence for his seriousness level 6 offense of indecent liberties under RCW 9A.44.100(1)(b) 3 years. An appropriate exceptional sentence would therefore range between 42 and 120 months. Abuse of discretion may be found when discretion is not exercised. *State v. Pettitt,* 93 Wn.2d 288, 296, 609 P.2d 1364 (1980). Although we review the court's decision for abuse of discretion, *Oxborrow,* at 530, the term of the exceptional sentence must nevertheless have some tenable basis in the record. It is difficult to determine from this record any reason for the sentencing court imposing the maximum term. In the absence of reasons, the present record gives the appearance the trial court failed to exercise any discretion at all. "[T]he length of an exceptional sentence cannot come out of thin air." *State v. Wood,* 42 Wn. App. 78, 84, 709 P.2d 1209 (1985), *review denied,* 105 Wn.2d 1010 (1986).

For the reasons stated, we remand this case for a further evidentiary hearing and resentencing, consistent with the guidelines set out in this opinion, and the legislative policy of the SRA.

THOMPSON, C.J., concurs.

GREEN, J. (dissenting)—Dennis Pryor's plea of guilty resulted from a plea bargain dismissing one count of indecent liberties against a 4–year–old child and three of five counts of indecent liberties against an 8–year–old. As part of the bargain, the prosecutor agreed to recommend a sentence within the standard range of 26 to 34 months. In the

presentence report, the corrections officers recommended the court impose an exceptional sentence and suggested a *minimum* of 60 months. The court followed these recommendations by imposing an exceptional sentence and exceeded the minimum recommendation in the report by fixing the sentence at 120 months for each count to run concurrently. In doing so, the court considered the following aggravating factors: (1) progressively predatory behavior toward minor females; (2) abuse of a position of trust; (3) particular vulnerability of the victim; and (4) deliberate cruelty. In my view, each of these factors is justified by the record and as a matter of law. As a consequence, I find no abuse of discretion by the court in sentencing Mr. Pryor to a term of 120 months. Therefore, I respectfully dissent from my brethren and would affirm the exceptional sentence.

I disagree with the majority conclusion the trial judge erred in considering the progressively predatory behavior of Mr. Pryor toward minor females as a factor in imposing an exceptional sentence. The corrections officers' presentence report states: "He is a predator who when released into society, seeks out his prey (young females), including a mentally retarded victim, for his deviant sexual pleasures. The age of his victims [14, 12, 10, 8] continues to become younger, with each incident." In my view this recommendation was properly adopted by the trial court and considered as a factor in determining whether to impose the exceptional sentence. While it may be argued under *State v. Hartley,* 41 Wn. App. 669, 705 P.2d 821, *review denied,* 104 Wn.2d 1028 (1985) and other cases cited by the majority that this predatory conduct standing alone would not be sufficient to support an exceptional sentence, it is a factor, which in the circumstances presented, is so closely intertwined with the other factors—vulnerability and position of trust—that it should be considered as a factor in determining the sentence. The conduct signifies more than the mathematical addition of offenses—it carries the message

of preying on younger and younger children that will likely occur in the future. Thus, I find no error.

I must also disagree with my brethren's conclusions that the trial court abused its discretion when it imposed an exceptional sentence and fixed it at 120 months. Even though the prosecution did not request an exceptional sentence, the court may nevertheless impose a sentence outside the standard range if it finds "substantial and compelling reasons" to do so. RCW 9.94A.120(2); *State v. Armstrong,* 106 Wn.2d 547, 723 P.2d 1111 (1986). Such is the case here. In fact, the presentence recommendation was that the court impose an exceptional sentence and recommended a *minimum* of 60 months—no maximum was recommended. The court imposed 120 months, the maximum provided by statute. I cannot conclude that no reasonable person would impose such a sentence based upon the factors present in this case, *State v. Oxborrow,* 106 Wn.2d 525, 531, 723 P.2d 1123 (1986), and this defendant's prior history. Consequently, I would affirm the sentence imposed by the trial court.

Review granted at 114 Wn.2d 1001 (1990).