[No. 9671-8-III.   Division Three.   March 27, 1990.]

THE STATE OF WASHINGTON, *Respondent,* v. WILLIAM A. THOMAS, *Appellant.*

*Victor Lara* and *Schwab, Kurtz & Hurley,* for appellant (appointed counsel for appeal).

*Jeffrey C. Sullivan, Prosecuting Attorney,* and *John J. Jay, Deputy,* for respondent.

THOMPSON, J.—William Thomas appeals an exceptional sentence of 60 months imposed by the court following his guilty plea to vehicular homicide. He also disputes his offender score.[1] We affirm.

On the afternoon of May 7, 1988, Mr. Thomas struck and killed 4–year–old Crystal Smith while driving his Chevrolet

---

[1] With an offender score of 0, his standard range would have been 15 to 20 months; with an offender score of 1, 21 to 27 months; with an offender score of 2, it was 26 to 34 months. *See* RCW 9.94A.310–.320.

Blazer through a convenience store parking lot in order to avoid a red traffic light at an intersection. Witnesses estimated his speed at 15 to 25 m.p.h. He did not realize he had hit anyone. Thus, he did not stop, but continued across the street to a second store at which he purchased beer. A witness followed him into the second store and told him what he had done. Mr. Thomas returned to the scene, where he finished drinking a can of beer while waiting for the police to arrive. His blood alcohol level registered .14 in a test performed after the accident.

On August 8, 1988, Mr. Thomas pleaded guilty to vehicular homicide. In his statement on plea of guilty, he said: "The standard sentence range for the crime is at least 26 and not more than 34 months, *based upon my criminal history which I understand the Prosecuting Attorney says to be: Two prior convictions; one DWI & one malicious mischief.*" (Italics ours.) The only evidence of this criminal history is found in the presentence investigation (PSI) which states that on October 4, 1983, Mr. Thomas was convicted of malicious mischief stemming from an alcohol related incident and that on March 24, 1983, he was arrested for driving while intoxicated. The PSI notes that the information concerning the DWI was obtained from the Washington State Department of Motor Vehicles (DMV), but that DMV gave no information regarding disposition for this charge.

At sentencing, defense counsel challenged the offender score, stating:

> [T]o protect Mr. Thomas' record, I would urge the prosecutor to show that he in fact does have a criminal history that does count. The reason I bring that up is because the malicious mischief is over five years old now [as of the date of the sentencing hearing which was held on October 27, 1988]. At the time he entered a plea it was less than five years, Your Honor. I think it may wash out.

The record does not reflect a ruling by the court on this objection. The judgment and sentence listed Mr. Thomas' offender score as "2".

In its oral decision and written findings, the court specified the following as aggravating factors: (1) Mr. Thomas exhibited a callous disregard for the effects of alcohol and for what he had done by continuing to drink after the accident. (2) He was traveling at a rate of speed that was inappropriate for a parking lot where it is reasonable to expect the presence of pedestrians. (3) Mr. Thomas carried no insurance and was not financially responsible, thereby shifting the financial impact of the victim's death to her family. (4) He has a long history of offenses related to alcohol abuse. (5) The only treatment for alcohol abuse which Mr. Thomas has undergone is attendance at an alcohol information school as a condition of his probation for second degree malicious mischief. He did not obtain treatment after the May 7, 1988, accident.

The court also adopted by reference the findings of the PSI:

Thomas' action in the past and on the day of the instant offense demonstrates an ongoing lack of concern for the safety of others, as well as himself. He was intoxicated and acted selfishly and impulsively when he violated the traffic code and caused the death of Crystal Smith by speeding through a parking area.

Thomas has been repeatedly involved in alcohol related traffic offenses and a felony conviction [for] Malicious Mischief. He has refused to learn from his past mistakes and has resisted the efforts of the courts to modify his behavior. [The PSI also indicates at page 6 that Mr. Thomas completed Alcohol Information School before being discharged from probation for his second degree malicious mischief conviction.] I see Thomas as an aggressive, antisocial person who will likely reoffend.

. . . .

Thomas should have realized the parking lot, at the convenience store, could reasonably [have] been expected to contain pedestrians, including the very young to the very old. Crystal Smith, being only four years of age, could not have been expected to have the skills necessary to elude a speeding vehicle. She was particular[ly] vulnerable because of age, and this appears to constitute an aggr[a]vating circumstance.

I believe that Thomas will continue to be a threat to the community through his nonstructured lifestyle and social attitudes. I also believe that he will profit from an extended period of

exposure to a structured environment such as is available in an inst[it]utional setting.

## THE EXCEPTIONAL SENTENCE

Mr. Thomas contends the court's reasons are not supported by the record and do not justify an exceptional sentence as a matter of law. He further argues the sentence is clearly excessive. *See* RCW 9.94A.210(4); *State v. Nordby,* 106 Wn.2d 514, 517–18, 723 P.2d 1117 (1986); *State v. Oxborrow,* 106 Wn.2d 525, 529–30, 723 P.2d 1123 (1986); *State v. Pryor,* 56 Wn. App. 107, 111–12, 782 P.2d 1076 (1989), *review granted,* 114 Wn.2d 1001 (1990).

First, Mr. Thomas challenges the court's findings that he has a history of alcohol related convictions and that this history shows he has been unable to modify his behavior. As noted, the PSI describes the 1983 conviction for malicious mischief as alcohol related and states that he participated in an alcohol information program as a condition of probation for that offense. It also states that Mr. Thomas admitted to two juvenile DWI's which had been reduced to negligent driving. It is true the PSI lists other alcohol related misdemeanor charges without saying whether convictions were obtained on these charges. But even if we omit the incidents for which no dispositions are given, Mr. Thomas still has a 1983 conviction and two juvenile offenses which he does not dispute are alcohol related. We are not persuaded by Mr. Thomas' argument, unsupported by citation to authority, that these convictions are "too old" to consider.[2] We regard them as evidence that Mr. Thomas' alcohol abuse is longstanding. Accordingly, we hold the findings are supported by the record.

Second, Mr. Thomas asserts the findings do not justify an exceptional sentence. He criticizes the court's findings

---

[2]Mr. Thomas draws an analogy between this situation and RCW 9.94A.360(2), which provides that prior convictions will "wash out" for offender score purposes if a specified length of time elapses without the defendant being convicted of another crime. However, the analogy does not benefit Mr. Thomas because his 1983 conviction does not meet the statute's criteria for washout, as pointed out later in this opinion.

that he operated his vehicle at a speed too high for conditions, violated the traffic code by using the parking lot as a roadway, and continued to drink at the scene. According to Mr. Thomas, these findings recite facts already part of the crime charged. We do not agree with this characterization.

The findings of excessive speed and that Mr. Thomas used the parking lot as a roadway relate to the victim's particular vulnerability. In *Nordby,* at 518, the court held the victim of a vehicular homicide was particularly vulnerable due to her defenseless status as a pedestrian. It reasoned:

> Unlike a potential victim in a second automobile, she had no opportunity to evade Horne's car once Nordby swerved it toward her. [Nordby was a passenger who grabbed the steering wheel.] Nor was she afforded the additional protection against injury that a second automobile might provide for a driver or passenger of that automobile. . . . This reason justifies an exceptional sentence.

Like the victim in *Nordby,* part of this victim's inability to avoid the consequences of Mr. Thomas' negligence flowed from the fact that she was a pedestrian in an area where she had little reason to expect a speeding vehicle.

The fact Mr. Thomas drank a beer after he struck the little girl is evidence of his disregard for the effects of alcohol. "While intoxication at the time of the offense is not a valid factor, . . . a history of chemical abuse and disregard for its effects is a valid factor to consider." *State v. Weaver,* 46 Wn. App. 35, 43, 729 P.2d 64 (1986), *review denied,* 107 Wn.2d 1031 (1987) (quoting *State v. Loitz,* 366 N.W.2d 744, 747 (Minn. Ct. App. 1985)).

In *State v. Davis,* 53 Wn. App. 306, 314–15, 766 P.2d 1120, *review denied,* 112 Wn.2d 1015 (1989), the court held the trial court properly concluded, "based on appellant's prior and pending alcohol related misconduct, that appellant's failure to respond successfully to treatment for alcohol abuse supports a finding of future dangerousness." *Davis,* at 315 (citing *Weaver,* at 43, and *In re George,* 52 Wn. App. 135, 148, 758 P.2d 13 (1988)). In *Pryor,* at 114,

this court reemphasized the need for *both* a history of similar offenses and evidence that the defendant is not amenable to treatment. Based on *Davis* and the cases cited therein, we hold that Mr. Thomas' history of alcohol related offenses *and* the fact that he continued to drink to excess and drive after attending the alcohol information course justified the exceptional sentence.

■ Finally, Mr. Thomas argues the 60–month sentence is clearly excessive. In *Oxborrow,* at 530, the court applied the abuse of discretion test to such a claim. We see no abuse of discretion here. The maximum for this offense is 10 years. Given the aggravating factors properly considered by the trial court, a reasonable person could come to the conclusion that 60 months was an appropriate punishment for Mr. Thomas' acts.

### THE OFFENDER SCORE

■ RCW 9.94A.360(12) provides that if the defendant's present conviction is for a felony traffic offense, each prior felony offense and each prior serious traffic offense adds one point to the defendant's offender score. Second degree malicious mischief is a class C felony. RCW 9A.48.080(2). DWI is a serious traffic offense. RCW 9.94A.030(23)(a). Washout provisions are included in RCW 9.94A.360(2):

> Class C prior felony convictions shall not be included in the offender score if, since the last date of release from confinement . . . pursuant to a felony conviction, if any, or entry of judgment and sentence, the offender had spent five consecutive years in the community without being *convicted* of any felonies. Serious traffic offenses shall not be included in the offender score if, since the last date of release from confinement . . . pursuant to a felony conviction, if any, or entry of judgment and sentence, the offender spent five years in the community without being convicted of any serious traffic or felony traffic offenses.

(Italics ours.) The 5 years is judged as of the date of the conviction for the new crime. D. Boerner, *Sentencing in Washington* § 5.6(d), at 5–10 to 5–11 (1985). A defendant's plea of guilty is a confession of guilt, "the result of which is

equivalent to conviction . . .". *In re Williams,* 111 Wn.2d 353, 357, 759 P.2d 436 (1988).

In *State v. Ammons,* 105 Wn.2d 175, 186, 713 P.2d 719, 718 P.2d 796, *cert. denied,* 479 U.S. 930, 93 L. Ed. 2d 351, 107 S. Ct. 398 (1986), the court held that for sentencing reform act purposes, prior convictions must be shown by a preponderance of the evidence. *See also* RCW 9.94A.370(2); D. Boerner § 6.10, at 6–13. However, the State need not introduce copies of convictions or otherwise prove them by a preponderance of the evidence if the defendant stipulates to the prior convictions. *State v. Vahey,* 49 Wn. App. 767, 777, 746 P.2d 327 (1987), *review denied,* 110 Wn.2d 1013 (1988). Here the PSI states that on March 10, 1983, Mr. Thomas was charged with second degree malicious mischief; he was convicted of the charge on October 4, 1983. While Mr. Thomas' counsel pointed out that the malicious mischief "was over five years old" as of the date of sentencing, he admitted it was not over 5 years old at the date of entry of Mr. Thomas' guilty plea; *i.e.,* August 8, 1988. We hold Mr. Thomas acknowledged that the malicious mischief had not washed out at the time of his conviction for the new crime.

As for the DWI, the State argues Mr. Thomas acknowledged that conviction in his statement on plea of guilty. *Vahey.* However, his counsel later objected and urged the prosecutor to show "he in fact does have a criminal history that does count." We hold the State did not meet its burden of proving the DWI by a preponderance of the evidence. *Ammons.* The record does not indicate whether the DWI resulted in a conviction, let alone the date of that conviction or any incarceration imposed. Absent proof of conviction, the court should not have considered the DWI in computing Mr. Thomas' offender score.

We have found only one case addressing the issue of the effect on an exceptional sentence of the court incorrectly computing the standard range for an offense. *Nordby,* at 517 n.3. There, the court simply noted:

The Court of Appeals also certified to this court the question of whether the sentencing court could use prior nonvehicular convictions in computing the criminal history of a person who has committed vehicular assault, where the court could not use such convictions in computing the criminal history of a person who commits vehicular homicide. *Compare* former RCW 9.94A.360(4) *with* former RCW 9.94A.360(5).[3] If Nordby's second degree burglary conviction could not be considered in computing his criminal history, his criminal history score would be "0" rather than "1", and his presumptive sentence range would be 3 to 9 months rather than 6 to 12 months. *However, since a resolution of this issue would not affect the validity of Nordby's 16-month exceptional sentence, and since neither party has briefed this issue, we decline to decide it at this time.*

(Italics ours.) We conclude the erroneous offender score did not affect the exceptional sentence.

Affirmed.

MUNSON, C.J., and SHIELDS, J., concur.

Review denied at 115 Wn.2d 1003 (1990).

---

[3]The present statute allows the sentencing court to use nonvehicular convictions in computing the offender score for vehicular homicide. *See* RCW 9.94A-.360(12).